UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

FREDERICK D. GIPSON #444684     CIVIL ACTION NO. 18-cv-1061

VERSUS     JUDGE FOOTE

SANDY MCCAIN     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Frederick D. Gipson ("Petitioner") was indicted by a Caddo Parish grand jury for second degree murder, three counts of obstruction of justice, and attempted distribution of schedule I CDS (MDMA/Ecstasy). On the day the matter was set for jury trial, Petitioner pleaded guilty to manslaughter. In exchange, the State dismissed the remaining charges and agreed to not file a multiple offender bill or seek a firearm enhancement penalty. Sentencing was left to the judge, who imposed a 25-year sentence.

Petitioner later filed a post-conviction application in state court and asserted a claim of ineffective assistance of counsel. He argued that if counsel had properly investigated the case, he would not have allowed Petitioner to plead guilty and would, instead, have proved that the homicide was justified. The state courts denied relief, and Petitioner asserted the same claim in this federal habeas corpus petition. For the reasons that follow, it is recommended that his petition be denied.

**Ineffective Assistance of Counsel; Guilty Plea**

Petitioner must show that the Louisiana courts' rejection of his ineffective assistance of counsel claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). That clearly established law for ineffective assistance claims is the two-part test set forth in Strickland v. Washington, 104 S.Ct. 2052 (1984). The petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Id. at 2064.

With respect to the performance prong, the court must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Strickland, 104 S.Ct. at 2065. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., 104 S.Ct. at 2064.

Even if counsel is ineffective, the petitioner must also show prejudice. That requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S.Ct. 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. To show such prejudice in a guilty plea case "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." Hill v. Lockhart, 106 S.Ct. 366, 370 (1985). See King v. Davis, 898 F.3d 600, 604 (5th Cir. 2018).

**Relevant Facts**

Detective Chad Dailey of the Shreveport Police Department was the lead investigator in the homicide of Buford Johnson, which occurred on May 16, 2013 in the 300 block of West 77th Street. He testified at a preliminary hearing that witnesses in the area saw a man in a white SUV drive up and engage in a hand-to-hand transaction with Mr. Johnson, who lived in the area. The driver, who was identified as Petitioner, produced a handgun and shot at Johnson, who was standing outside his SUV, several times. Johnson was not armed, and he retreated to a field where he fell and died of a single gunshot wound to the chest. Two adults and two teenagers who witnessed the shooting reported that the driver fired several shots. Police recovered five shell casings for a 5.7 x 28 mm caliber weapon. The teenagers were shown a photo lineup and identified Petitioner as the shooter.

Detective Dailey obtained an arrest warrant for Petitioner and interviewed him after he was taken into custody. Petitioner's vehicle was a white Mazda Tribute, which matched the vehicle description provided by witnesses. Police had phone records that showed calls between Petitioner and Mr. Johnson before the time they met. Petitioner told Detective Dailey that he and Johnson had agreed to make a drug transaction. Petitioner said the deal was $450 for 50 pills, but he would not say what kind. (A witness who was involved in arranging the transaction told police that the pills were ecstasy.) Petitioner told Detective Dailey that, during the drug transaction, Johnson produced a handgun, but the weapon

jammed. Johnson retreated some distance, cleared his malfunction, and began firing at Petitioner. Petitioner produced his own pistol and fired back at Johnson.

Detective Dailey testified at the hearing that all of the eyewitnesses said that Petitioner was the only person who had a gun and was shooting. No witness saw the victim with a weapon, and no weapon was found on his body. Petitioner said that he threw his gun in a field in Cedar Grove, and he disposed of several shell casings that were ejected inside his vehicle. Police did not recover the weapon or those other casings.

This was not Petitioner's first brush with the law. He had three felony convictions for simple robbery, simple burglary, and the Texas crime of failure to render aid. He also had some misdemeanor convictions involving marijuana.

Defense counsel Kurt Goins, who has decades of experience as a public defender, was appointed to represent Plaintiff in July 2013. Mr. Goins filed a motion to suppress the photo identification, but the motion was denied after a hearing. He filed a motion to prohibit other crimes evidence, pursued discovery of interviews or statements from potential witnesses, discovered Facebook photographs of the victim holding a gun, and moved for a continuance for additional time to complete his investigation. The case was set for trial on December 8, 2014.

A second-degree murder conviction would have carried a mandatory life sentence without benefit of parole, probation, or suspension of sentence. On the day of trial, the prosecutor announced a plea agreement pursuant to which Petitioner would plead guilty to the lesser charge of manslaughter (which carries a 40-year maximum sentence and does not prohibit parole) and the state would dismiss the other charges, forgo a multiple offender

bill, and not seek a firearm enhancement. Defense counsel stated that he had "discussed this at length with Mr. Gipson," and Petitioner had agreed to the plea.

The court engaged in a <u>Boykin</u> colloquy with Petitioner, who said that he was 34 years old and had an associate's degree. The prosecutor recited the factual basis, which was a summary of the facts stated above, including that "Mr. Gipson shot and killed Buford Johnson." The court asked Petitioner if those facts were true and correct. He answered, "Yes, your honor." Petitioner said that no one had forced or coerced him to plead guilty. His plea was accepted. Tr. 367-73. The court later sentenced Petitioner to serve 25 years at hard labor with credit for time served. Tr. 380.

**State Post-Conviction Proceedings**

Petitioner filed a post-conviction application that asserted the same claim of ineffective assistance of counsel that he now presents to this court. Petitioner pointed to witness statements gathered by police, and he contended that they included information that proved the shooting was justified. He argued that if counsel would have reviewed those statements and Petitioner's claim that the victim first attempted to shoot him, counsel would have seen that there was a defense and not advised Petitioner to plead guilty.

Petitioner's statement to police that the victim first pulled a gun on him was contested by all of the other eyewitnesses, who said Petitioner was the only person with a gun. The police did not find a gun on or near the victim.

Petitioner pointed to a statement by Hollie Everett. This statement, and the others mentioned below, were produced to defense counsel during discovery. Tr. 9. Ms. Everett told police that she was working at the Jiffy Pack when she heard gunfire. She looked

outside and saw a white SUV with a black male shooting out of the vehicle. "The shooting was light pops and she said it sounded like to her that someone shot back." Tr. 61. Ms. Everett did not say that she saw the victim firing or that she saw him at all. She offered only that it sounded like someone shot back.

Petitioner points to the report of a statement from Mr. Johnson's girlfriend, Donjwanique Robinson. Ms. Robinson said that she was not present at the time of the shooting, but she had heard from some people that Mr. Johnson had committed a robbery and that the people he robbed came back and shot him. She believed that Johnson was selling marijuana. According to the report, "She also said that she had seen Johnson carrying a firearm from time to time." She did not say that Johnson was armed at the time of the shooting.

Roland Madison is Mr. Johnson's brother. He told police that Johnson and another man had planned to rob a man named Fred (Petitioner's first name). The other man called Fred and ordered 50 pills for approximately $450. The plan was for Johnson to rob Fred when Fred arrived at the corner of West 77th Street and Linwood Avenue. According to the report, "Madison said that he did not know if his brother was armed at the time of the homicide." Tr. 62. The robbery/theft scenario is supported by Detective Dailey's testimony that "the witnesses stated that they saw the defendant grab the victim and tell him to give him his stuff back." Tr. 320.

The trial court denied the application in a two-page ruling that set forth the Strickland standard and found that Petitioner "has not met this burden of proof, therefore his ineffective assistance of counsel is without merit." The court added that Petitioner had

failed to show that any performance by counsel was below a professional standard of practice, and he had not provided any specific facts to show how any such performance prejudiced his case. Tr. 502-03. Petitioner filed a writ application with the state appellate court. It issued a brief opinion that "[o]n the showing made, the writ is denied." Tr. 547. The Supreme Court of Louisiana denied a writ application in a per curiam decision that stated Petitioner "fails to show that he was denied the effective assistance of counsel during plea negotiations under the standard of Strickland[.]" Tr. 583-84.

**Analysis**

Petitioner's claim was adjudicated and denied on the merits by the state court, so Section 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

See Young v. Spinner, 873 F.3d 282, 285 (5th Cir. 2017) (applying habeas deference in a guilty plea context).

The Supreme Court recently clarified its standard for showing prejudice in the context of a guilty plea, emphasizing the need for a case-by-case examination of the totality of the evidence. Lee v. United States, 137 S.Ct. 1958, 1966 (2017). Although the Court declined to adopt an automatic rule denying prejudice claims when the defendant cannot mount a viable defense, it warned against courts "upset[ting] a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 1966-67; Young, 873 F.3d at 285-86.

Petitioner has not met his heavy burden of demonstrating that the state court's rejection of his Strickland/Lockhart claim was unreasonable. Petitioner was facing a natural life sentence if convicted of second degree murder. Every eyewitness told police that the victim was unarmed and that Petitioner fired multiple shots at the victim. Petitioner admitted that he fled the scene and discarded both his weapon and shell casings, which are not indicative of a victim who engaged in self-defense. Petitioner points to portions of the statements collected from other persons, most of whom did not actually witness the shooting, and contends that they support his defense. Defense counsel obtained those statements in discovery more than a year before the plea was entered, so he had ample time to weigh them.

Petitioner complains that counsel should have tested the victim's clothing and performed other tests to determine whether the victim had gunpowder residue consistent

with firing a firearm.  "However, a petitioner 'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" Johnson v. Cain, 548 Fed. Appx 260, 262 (5th Cir. 2013), quoting U.S. v. Green, 882 F.2d 999, 1003 (5th Cir. 1989).  It is Petitioner's burden to come forward with such evidence in support of such a claim. Id. Petitioner has offered nothing but speculation that testing may have revealed gunpowder residue, so he has not met his burden.

The facts pointed to by Petitioner might be somewhat supportive of a defense, but any reasonably competent attorney would have been remiss if he did not recommend that Petitioner strongly consider the plea bargain that was offered to him in light of all of the evidence.  When one looks to the entire body of evidence that was facing Petitioner on the date of trial, there is no basis to find that counsel rendered deficient performance by recommending he take the plea bargain.  There is also no basis to find that, had counsel encouraged Petitioner to decline the offer and go to trial, that Petitioner would have rejected the plea bargain and done so.  The state court's denial of this claim cannot be described as so wrong as to be an objectively unreasonable application of Strickland/Lockhart, so habeas relief is not available under the doubly deferential standard of review of Section 2254(d).

**Motion to Stay**

More than three months after briefing was completed, Petitioner filed a Motion to Stay and Abey (Doc. 7).  He asked the court to stay its consideration of this petition because he has acquired audio copies of 911 calls related to his case, as well as audio recordings of

all of the witnesses who were interviewed by the police. Petitioner makes a general assertion that the tapes support his claims that the victim possessed a gun and was shooting at him and that the victim went to the scene with the intent to rob Petitioner. He contends that defense counsel never shared the contents of those tapes with him. Petitioner stated in his February 2019 filing that he intended to file, within 30 days, a new post-conviction application in state court that is based on the recently obtained tapes.

The stay and abeyance requested by Petitioner "should be available only in limited circumstances." Rhines v. Weber, 125 S.Ct. 1528 (2005). Courts should be cautious about granting such stays because they undermine the AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. Id. A "stay and abeyance is appropriate when the district court finds that there was good cause for the failure to exhaust the claim; the claim is not plainly meritless; and there is no indication that the failure was for purposes of delay." Id.

Petitioner has not shown good cause to further stay this case. He entered his guilty plea in January 2015, commenced his post-conviction proceedings in state court in June 2016, and concluded those proceedings in May 2018. Petitioner does not explain why, during those proceedings, he did not act with reasonable diligence and acquire the recordings that he says he only recently obtained. He also does not provide specific information from the recordings that would lend more than marginal support for his claim of ineffective assistance of counsel.

Assuming Petitioner files a second post-conviction application in state court, it will take at least several months and possibly a few years before all stages of those proceedings are completed. This court should not have to carry a case on its docket for several years because Petitioner has recently discovered additional evidence to support what was determined above to be a plainly meritless ineffective assistance claim. Petitioner will also face significant burdens in state court in an effort to present a successive and potentially untimely petition, which could give rise to a procedural bar against federal consideration of issues presented in the second petition. State ex rel. Gray v. State, 177 So. 3d 333 (La. 2015) ("Similar to federal habeas relief, *see* 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8."). For these reasons, the undersigned does not find that this case presents one of the rare limited circumstances in which a stay and abeyance is warranted.

Accordingly,

It is recommended that Petitioner's Petition for Writ of Habeas Corpus be denied. It is further recommended that Petitioner's Motion to Stay and Abey (Doc. 7) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of April, 2019.

Mark L. Hornsby
U.S. Magistrate Judge